# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:04cr295

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM AND ORDER** |
| MELVIN BURNS ) | |
| ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion and Memorandum in Support of Defendant's Request to Withdraw Plea. (Doc. No. 53). The government has not filed a written response, but opposed the motion orally when it was filed during the defendant's sentencing hearing on August 19, 2005.

I.  PROCEDURAL HISTORY

The defendant was indicted with two co-defendants for a drug trafficking conspiracy on November 15, 2004. (Doc. No. 1). The grand jury charged in Count One that the amount of cocaine base known or reasonably foreseeable to the defendant was at least 50 grams, but less than 150 grams. (Doc. No. 1: Indictment at 1). At an initial appearance on November 23, 2005, United States Magistrate Judge David C. Keesler informed the defendant that he faced a mandatory minimum sentence of 20 years' imprisonment and a maximum sentence of life imprisonment.[1] The defendant was detained after a hearing in December 1, 2005. (Doc. No. 12: Order of Detention Pending Trial).

---

[1] This hearing has not been transcribed. However, the Court has reviewed the recording of the hearing.

Magistrate Judge Keesler held a bond review hearing on February 2, 2005, after the defendant moved for reconsideration of his detention (Doc. No. 25: Motion). During the hearing, counsel for the defendant asserted that the defendant knew he was facing a minimum of 20 years. (Osho, TR at 5). Although Magistrate Judge Keesler described the defendant's request for bond as "outrageous," he agreed to release the defendant on stringent conditions after the government assured the court that the defendant could continue to provide valuable assistance if released for a short period of time. (Magistrate Judge Keesler, TR at 4, 11-13; AUSA Murray, TR at 6-7). The magistrate judge, however, vacated the release order two days after the hearing. (Doc. No. 26).

At another bond review hearing at approximately 10 a.m. on February 10, 2005, Magistrate Judge Keesler explained that he vacated the release order after learning of the U.S. Probation Office's disagreement, which was not represented at the previous hearing. (Magistrate Judge Keesler, TR at 3). After giving the parties the opportunity to be heard, the magistrate judge concluded there had not been a material change in circumstances to justify the defendant's release. (Magistrate Judge Keesler, TR at 7). Magistrate Judge Keesler remarked, "Mr. Burns will have to remain in detention. To the extent he can assist the government from there, Mr. Osho, knock yourself out." (Magistrate Judge Keesler, TR at 8).

Shortly after the hearing, at approximately 11:19 a.m., the defendant filed a plea agreement. (Doc. No. 28). Paragraph 4 of the agreement states that the defendant is aware that he faces not less than 20 years and not more than life imprisonment for the offense in Count One, to which he agreed to plead guilty. (Doc. No. 28: Plea Agreement at 1). Paragraph 23 states that the defendant agrees to cooperate with the United States, if and only if requested to do so. (Doc. No. 28: Plea Agreement at 5-6). Additionally, Paragraph 24 states that the government, in its

2

sole discretion would determine whether the defendant had provided substantial assistance warranting a motion to impose a sentence below the mandatory minimum. (Doc. No. 28: Plea Agreement at 7).

On February 23, 2005, the defendant entered his guilty plea before Magistrate Judge Carl Horn III. The defendant took an oath to respond truthfully to the court's questions. (Burns, TR at 2). The defendant responded affirmatively that his mind was clear and that he was there to enter a plea that could not be withdrawn later. (Burns, TR at 3). The defendant responded affirmatively that he was aware that he faced a 20-year minimum term of imprisonment on the plea and a maximum of life. (Burns, TR at 5-6). The defendant responded affirmatively that he was guilty of Count One. (Burns, TR at 10). The government explained the terms of the plea agreement, including the government's sole discretion to determine whether the defendant's assistance qualified for a departure motion. (AUSA Marston, TR at 14). Additionally, the government announced that the court would impose a sentence no less than the statutory minimum of 20 years. (AUSA Vogel, TR at 16-17). The defendant responded affirmatively that he understood those where the terms and that no other promises of leniency or a light sentence had been made to induce his guilty plea. (Burns, TR at 18-19). The defendant responded affirmatively that he was satisfied with the services of his attorney. (Burns, TR at 20). Accordingly, the magistrate judge accepted the plea upon finding that the defendant's plea was entered knowingly and voluntarily, with understanding of the charges, potential penalties, and consequences of the plea. (Magistrate Judge Horn, TR at 22; Doc. No. 29: Entry and Acceptance of Guilty Plea at 5). The defendant made no statement to the court about being released from detention in conjunction with his plea.

On March 4 and 29, 2005, the defendant filed motions for bond review. (Doc. No. 31, 37). In the second motion, counsel for the defendant conceded that there were not any additional grounds justifying release that had not been raised previously. (Doc. No. 37: Motion at 1). During the hearing on the motions held April 6, 2005, counsel for the defendant informed the court that the defendant wanted new counsel. (Osho, TR at 3). The defendant stated he had been misled about his plea and that he wanted a new lawyer to obtain a better deal. (Burns, TR at 5-6). Magistrate Judge Keesler allowed defense counsel to withdraw and ordered the appointment of new counsel. (Magistrate Judge Keesler, TR at 9). Danielle Bess Obiorah, current counsel of record, was appointed to represent the defendant on April 20, 2005. (Doc. No. 41).

The defendant subsequently wrote a letter to Judge Richard Voorhees, to whom the case had previously been assigned. In the letter dated June 8, 2005, and filed July 20, 2005, the defendant made no complaint about his guilty plea, but rather asked for additional time to review the presentence report (PSR) with his attorney. (Doc. No. 48). Counsel for the defendant wrote a letter to the probation officer noting objections to the PSR and stating she would seek a variance from the guidelines at sentencing. (copy of letter attached to PSR Addendum).

On August 12, 2005, the defendant's case was set for a sentencing hearing the following week. (Doc. No. 51). At the hearing on August 19, 2005, the defendant filed a motion to withdraw his guilty plea. (Doc. No. 53). The Court heard arguments from the parties and took the matter under advisement in order to review the recordings of the previous hearings in magistrate court. Transcripts of some of those hearings were subsequently filed.

The defendant wrote a letter to the Court dated August 25, 2005, which was filed on September 27, 2005. (Doc. No. 59). In the letter, filed under seal because it details information

4

provided by the defendant to the government, the defendant made claims that contradict his statements under oath to the magistrate judge about additional promises being made to induce his plea. For example, the defendant asserted his former attorney told him that he would receive a downward departure, would face 10 years or less, and would be released from detention upon signing the plea. (Doc. No. 59: Memorandum at 1). The defendant also admitted his part in the conspiracy and stated he did not wish to challenge the government at all. (Doc. No. 59: Memorandum at 5). However, the defendant requested that he receive what was promised for his assistance. (Doc. No. 59: Memorandum at 5).

II.     LEGAL DISCUSSION

In his motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(e),[2] the defendant acknowledged his burden to show a "fair and just reason" for withdrawal. (Doc. No. 53: Motion at ¶ 6); Fed. R. Crim. P. 11(d)(2)(B). He claims he was promised he would be released from jail in order to cooperate proactively with the government to earn a motion for downward departure under USSG §5K1.1. (Doc. No. 53: Motion at ¶ 4). The defendant admits release from jail was not a term or condition contained in the plea agreement; nevertheless, he asserts the "factual circumstances" show it was the basis for his signing the plea agreement. (Doc. No. 53: Motion at ¶ 5). Thus, the defendant claims his plea was not knowing and voluntary because "he did not fully comprehend the effects of the plea agreement if he was not released from jail," that is, he faced a mandatory minimum sentence of 20 years if he did not receive a downward departure for substantial assistance. (Doc. No. 53: Motion at ¶ 7).

A defendant does not have an absolute right to withdraw a guilty plea, even before

---

[2]In 2002, provisions relating to withdrawal of guilty pleas were moved from Rule 32(e) to Rule 11(d). Fed. R. Crim. P. 11 and 32 (Thompson/West 2005)(Advisory Committee Notes).

sentencing, but rather bears the burden of demonstrating that a "fair and just reason" supports his request to withdraw. Fed. R. Crim. P. 11(d)(2)(B); United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Courts typically consider a variety of factors in determining whether a defendant has met his burden, including: (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources. Id.

It is well-settled that magistrate judges may conduct Rule 11 proceedings and accept guilty pleas with a defendant's consent. United States v. Osborne, 345 F.3d 281, 285 (4th Cir. 2003); United States v. Graham, 48 Fed. Appx. 458, 459 (4th Cir. 2002)(unpublished opinion). "[A]n appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding." United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996). Statements made by a defendant during the course of such a proceeding may not ordinarily be repudiated. Id. at 1308. In fact, a strong presumption of veracity attaches to a defendant's declarations made in open court. United States v. Morrow, 914 F.2d 608, 614 (4th Cir. 1990).

Here, the defendant told the magistrate judge during the Rule 11 hearing that the plea agreement's terms announced in court were the only promises made to induce his guilty plea. (Burns, TR at 18-19). However, in his motion, the defendant now claims there was an additional promise made to him, not included in the plea agreement, assuring his release from detention for the purposes of cooperating with the government. (Doc. No. 53: Motion at ¶ 5).

Given the factual record in this case, the defendant's attempt to repudiate his statements under oath is unavailing. Approximately an hour before the defendant filed his plea agreement on February 10, 2005, Magistrate Judge Keesler denied the defendant's motion for bond review and remarked that any cooperation of the defendant would have to be accomplished in jail. (Magistrate Judge Keesler, TR at 7-8). Therefore, the defendant's claim that the plea was not knowing and voluntary because he believed he would be released as part of the deal is not credible.

Other evidence also refutes the defendant's claim that the plea was not knowing and voluntary. On numerous occasions the defendant was informed that the mandatory minimum sentence in his case was 20 years' imprisonment: at his initial appearance on November 23, 2005; at his first bond review hearing on February 2, 2005 (Osho, TR at 5); in his plea agreement filed on February 10, 2005 (Doc. No. 28: Plea Agreement at ¶ 4); and during his Rule 11 hearing on February 23, 2005 (Burns, TR at 5-6). He was also clearly informed that the government retained sole discretion whether to move for a downward departure in his plea agreement (Doc. No. 28: Plea Agreement at ¶ 24) and during his Rule 11 hearing (AUSA Marston, TR at 14). The defendant stated under oath he understood these terms. (Burns, TR at 5-6, 18-19). The defendant can not reasonably claim the government breached a promise to move for downward departure (Doc. No. 59: Memorandum at 1), because no such promise was made. United States v. Kitchens, No. 98-4175, 1998 WL 610885, 161 F.3d 4 at *2 (4th Cir. Sept. 3, 1998)(unpublished opinion) (defendant expected to be able to cooperate, but was subsequently incarcerated). Therefore, the defendant's claim that his plea was not knowing and voluntary is without merit.

Consideration of the other factors detailed in Moore shows the defendant has failed to

7

establish a fair and just reason for withdrawal of his guilty plea. One of the factors is whether the defendant has credibly asserted his legal innocence. Moore, 931 F.2d at 248. Here, the defendant has not attempted to assert his legal innocence, but rather has plainly admitted his guilt during the Rule 11 hearing on February 23, 2005 (Burns, TR at 10) and in his recent letter to the Court (Doc. No. 59: Memorandum at 5). Thus, the defendant's desire to withdraw his plea is based on his desire to receive a better deal, not actual innocence. (Burns, April 6, 2005 TR at 5-6). Therefore, this factor weighs against allowing the defendant to withdraw his plea. Hartman v. Blankenship, 825 F.2d 26, (4th Cir. 1987)(remorse over deal not grounds to upset finality of plea).

Another factor is whether there has been a delay between the entering of the plea and the filing of the motion. Moore, 931 F.2d at 248. In Moore, the Fourth Circuit found a six-week delay to be too lengthy. Id. Here, the defendant's plea was accepted by the magistrate judge on February 23, 2005. (Doc. No. 29: Entry and Acceptance of Guilty Plea at 5). The defendant's motion to withdraw his plea was not filed until his sentencing hearing on August 19, 2005, nearly six months later. (Doc. No. 53). In between those dates, the defendant asked for a new lawyer to get a better deal (Burns, April 6, 2005 TR at 5-6) and wrote Judge Vorhees on June 8, 2005, to ask for more time to review the PSR with his new attorney (Doc. No. 48). The nearly six-month delay between the defendant's plea and motion to withdraw the plea weighs against granting his request.

Whether defendant has had close assistance of competent counsel is another factor for the Court to consider. Moore, 931 F.2d at 248. At the defendant's Rule 11 hearing on February 23, 2005, he testified that he was satisfied with his then-appointed attorney. (Burns, TR at 20). The

defendant later criticized the attorney for not obtaining a better deal (Burns, April 6, 2005 TR at 5-6), and then alleged in August 2005 that the attorney had misled him about the terms of the plea agreement (Doc. No. 59: Memorandum at 1). However, the correct terms of the plea agreement were explained to the defendant at his Rule 11 hearing and he stated that he understood them. (Burns, TR at 5-6, 18-19). Therefore, this factor also weighs against the defendant's request.

The final factors to consider are whether withdrawal will cause prejudice to the government, and whether it will inconvenience the Court and waste judicial resources. Moore, 931 F.2d at 248. There is no direct proof of actual prejudice to the government, but the Court recognizes the potential prejudice to the government if the defendant were allowed to withdraw his plea and the case were set for trial after such a delay. Additionally, the court system has a strong interest in judicial economy. Wilson, 81 F.3d at 1306. Significant resources have already been expended on the defendant's case. Further, because the defendant does not contest his guilt, allowing him to withdraw his plea and sending the case to trial would be a waste of judicial resources.

Thus, all the factors recognized by the Fourth Circuit in Moore weigh against the defendant's request to withdraw his plea.

III. CONCLUSION

A proper Rule 11 hearing was conducted in this case, during which the defendant testified under oath that he understood the mandatory minimum penalty he faced, that he understood the terms of his plea agreement, that no additional promises had been made to him, and that he was satisfied with his attorney. Nearly six months later, the defendant claimed he was promised that

he would be released in order to cooperate with the government.  Based on review of the record in this case, the Court finds that the defendant's claim is not credible.  The Court further finds that the defendant has failed to establish a fair and just reason to justify withdrawal of his guilty plea.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Withdraw Plea is **DENIED**.

**Signed: October 14, 2005**

Robert J. Conrad, Jr.
United States District Judge